United States District Court
Southern District of Texas
**ENTERED**
February 23, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN GRAY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-109 |
| | § | |
| BRAZORIA COUNTY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, John Gray and Crystal Gray Sandiford, have filed this lawsuit against Brazoria County and other Defendants because their daughter, Victoria Gray, died as a result of suicide on September 2, 2015 while in custody in the Brazoria County Jail. Plaintiffs filed their Original Complaint in this Court on April 26, 2016, and their live pleading is their First Amended Complaint on August 16, 2016. (Dkt. 18).

Plaintiffs assert claims under 42 U.S.C. § 1983 for the violation of Victoria Gray's constitutional rights under the Fourth, Eighth, and Fourteenth Amendment of the United States Constitution. Plaintiffs have named nine Defendants: Brazoria County; Captain Gilbert Gardner; Deputy Jailer Viviana Gonzalez; Deputy Jailer Nancy Gragert; J. Allen and Associates of Texas, LLC, the contractor who provides medical services in the Brazoria County Detention Center; Nurse Laronda Billups, LVN; Nurse Sandra Sandoval, RN; and Nurse Sherry Garrido, LVN. Each of the individuals is sued in their individual capacities. Plaintiffs also assert claims against a group of "Unknown Employees" alleged to have been "the jail and infirmary staff on duty in the time period

August 29, 2014 to September 02, 2014, who were charged with the care of Victoria Gray."

Plaintiffs filed their Original Complaint on April 26, 2016. Dkt. 1. The County immediately gave notice, under this Court's Procedures, of its intention to file a motion to dismiss, and the Court held a scheduling hearing, after which the Brazoria County parties proceeded with exchange of initial information and some preliminary discovery. This discovery included personnel files and the names of medical staff that may have provided care to Gray or been on duty during the relevant time frame. On August 16, 2016, Plaintiffs filed their First Amended Complaint, naming the medical providers defendants. Each of the Defendants has now filed a motion to dismiss the Plaintiff's First Amended Petition under Federal Rule of Civil Procedure 12(b)(6).

### I. Allegations in Plaintiffs' First Amended Complaint

The Plaintiffs allege that Victoria Gray's history with the Brazoria County Detention Center began as early as March 2013, when she was incarcerated for one year on an assault conviction. Eight months later, in January 2014, Gray was again in the Brazoria County Detention Center on another assault charge. During this January 2014 incarceration, she attempted to commit suicide in her cell and was "subsequently committed to the Austin State Hospital for evaluation and treatment." According to Plaintiffs, Gray's release from Austin State Hospital in April 2014 was conditioned upon a court order requiring her "as a condition of her probation, to take anti-depressant medications [Klonopin and Trazodone] and . . . to present for blood tests to confirm that she was taking her required medications." Plaintiffs allege that these medications are

highly addictive and pose a risk of suicidal thoughts for persons in withdrawal, and Plaintiffs further generally allege that "[a]ll reasonable health care providers, including those in the field of corrections, are aware of the risks of withdrawal from these medications and its potentially fatal consequences."

Four months after her release from Austin State Hospital under these conditions, Gray was again arrested on August 29, 2014 for violating her probation. Plaintiffs allege that, at the time of her arrest, Gray was carrying her prescribed Trazadone but that it was taken from her during the intake process. Plaintiffs allege that Gray began exhibiting alarming symptoms almost immediately, "believing speakers were being pulled through her ears, was depressed and hearing things," and that Jail personnel determined Gray was a "[maximum] suicide risk." Plaintiffs further allege that Gray was "disruptive, exhibiting violent and irrational behavior," and she was then placed in "isolation for low risk inmates." Plaintiffs allege that this cell was subject to 30-minute "scrutiny" or checks, and that such a schedule was inappropriate for Gray.

Plaintiffs allege that, the day after her arrest, Gray asked Deputy Jailer Bailey for her medications. Plaintiffs also allege that Deputy Jailer Bailey[1] reported that Gray attempted suicide that same day, August 30, 2014, and that such a report should have been given to the Captain on duty. Plaintiffs' allegations do not clarify whether they are alleging that such a report was made.

On August 31, 2014, Gray was evaluated by Nurse Billups, and Plaintiffs allege that Nurse Billups determined that Gray was a "suicide risk." Plaintiffs allege that, at that

---

[1] Deputy Jailer Bailey is not a named defendant in this case.

evaluation, Gray "exhibited symptoms of withdrawal, auditory and visual hallucinations, emotional instability, depression, numbness in the abdomen, and wounds from attempted self harm" but that she was simply "returned to isolation, not provided her medications, and not put on suicide watch."

After Gray was placed in her cell, Plaintiffs allege that other inmates heard her "begging for medication, and crying out for assistance." During the next days, Plaintiffs allege that Defendants failed to monitor Gray adequately, that as much as 48 minutes could elapse time between checks on Gray. Plaintiffs also allege that the cell in which Gray was placed did not contain adequate equipment for a suicidal inmate—for example, Gray was not provided with a paper mattress cover.

During the evening of September 2, 2014, Gray committed suicide in her cell by hanging herself with a mattress cover.

## II. Applicable Law

At the outset, the Court noted that, although Plaintiffs allege Defendants violated Gray's rights under the Fourth, Eighth, and Fourteenth Amendment, there are no facts that raise a Fourth Amendment claim regarding the original seizure or arrest of Gray. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993). Accordingly, the Court finds that Plaintiffs' claims under the Fourth Amendment should be **DISMISSED** as to all Defendants.

Similarly, the facts pled show that Gray was a pretrial detainee, not a prisoner under the Eighth Amendment. Accordingly, Plaintiffs' claims under the Eighth

Amendment should be **DISMISSED** as to all Defendants. However, as discussed below, the standards of the Eighth Amendment remain relevant to this case.

### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id*.

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). When

plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In other words, a complaint must provide sufficient factual allegations that, if assumed true, "raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In conducting this analysis, however, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B. Section 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiffs suing public officials under § 1983 must file short and

plain complaints that must be factual and not conclusive. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

### C. Pretrial Detainee's Constitutional Right to Medical Care and Protection from Harm

Although pretrial detainees such as Gray are not covered by the Eighth Amendment, the Fifth Circuit has nonetheless held that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (*Hare II*) (en banc). Thus, the claims of pretrial detainees proceed under the Eighth Amendment standards. *Id.* at 643 (noting, there is "no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs.").

Under the Eighth Amendment, conditions of confinement must be "humane" and "must not involve the wanton and unnecessary infliction of pain." *Palmer v. Johnson*, 193 F.3d 346, 351–52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). This means that there is no question that "prisoners are entitled to receive 'adequate . . . medical care.'" *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (internal citations omitted).

The Fifth Circuit evaluates these types of complaints regarding the treatment of pretrial detainees under one of two rubrics, "jail conditions" or "episodic acts or

omissions." *Hare II,* 74 F.3d at 644–45; *Campos v. Webb County, Tex.*, 597 Fed. App'x 787, 791 (5th Cir. 2015). "Jail conditions challenges are evaluated under *Bell v. Wolfish* to determine '[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective.'" *Campos*, 597 Fed. App'x at 791 (citing *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Episodic acts or omissions, however, require the plaintiff to prove that the official "acted or failed to act with subjective deliberate indifference to the detainee's needs." *Hare II*, 74 F.3d at 636, 647–48. Reviewing the First Amended Complaint, the Court finds that Plaintiffs have asserted an episodic acts or omissions claim. *See, e.g., Campos*, 597 Fed. App'x at 791 (reviewing "guideposts" for determining whether a complaint is properly construed as challenging jail conditions or episodic acts or omissions).

Thus, Plaintiffs must first allege "objective exposure to a substantial risk of serious harm," and then that "prison officials acted or failed to act with deliberate indifference to that risk." *Robert v. Caldwell,* 463 F.3d 399, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847); *see also Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (plaintiffs "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend ... the Eighth Amendment."). As to the first prong, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015)

(citing *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). A plaintiff may carry his burden here by alleging that the particular risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Id*. (internal quotation marks omitted). However, the knowledge at issue is that of the officers individually, not collectively. *See Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007).

As to the second prong, a prison official acts with "deliberate indifference" when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hinojosa*, 807 F.3d at 665; *see also Hare*, 74 F.3d at 643 ("[T]he proper inquiry is whether the official had a culpable state of mind in acting or failing to act. . .We adopt a standard of deliberate indifference as the measure of culpability for such episodic acts or omissions.").

"The failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as a violation of the detainee's constitutional rights." *Rhyne v. Henderson Cty.*, 973 F.2d 386, 391 (5th Cir. 1992). The Fifth Circuit recently addressed this standard in the context of the care given to suicidal inmates. *Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016). There, the court noted that, under *Farmer*, "evidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate indifference." *Id*. (noting, "prison officials who

actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). In *Hyatt*, the Fifth Circuit further observed that, "while ... the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be." *Id*. (citing *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328–29 (5th Cir. 1998) (*Hare III* ) (quoting *Rellergert v. Cape Girardeau Cty.*, 924 F.2d 794, 797 (8th Cir. 1991)). Instead, in such cases, the Fifth Circuit noted that "[w]hat is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability." *Id*. (citing *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)).

Similarly, in the context of medications withdrawn or withheld, the Fifth Circuit has repeatedly stated that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Rogers,* 709 F.3d at 409. Additionally, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Id*. Instead, "deliberate indifference" requires a prisoner to allege that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id*. Similarly, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter,* 467 F.3d at 464

(quotation omitted); *but see Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014) (plaintiff alleged deliberate indifference where he alleged substantial harm due to defendant's persistent refusal to answer his "sick-call request slips" or provide pain medication even when he was in so much pain that he was unable to lie down in bed or use toilet properly).

Unquestionably, "[d]eliberate indifference 'is an extremely high standard to meet.'" *Gobert*, 463 F.3d at 346 (internal citations omitted). But it is not impossible. Ignoring or refusing to treat medical complaints can be "deliberate indifference." *See Easter v. Powell,* 467 F.3d 459, 464 (5th Cir. 2006) (prisoner alleged that defendant refused to follow a prescribed course of treatment even though defendant was aware that prisoner had a medical condition that posed a substantial risk to his health); *Coleman,* 745 F.3d at 765 (prisoner's allegations that he informed prison officials that he had fallen multiple times and his hip was broken, but officials did not follow up or report his alleged statements, sufficiently alleged deliberate indifference); *Perez v. Anderson*, 350 Fed. App'x. 959, 962 (5th Cir. 2009) (vacating dismissal of Eighth Amendment claim where "Perez's allegations suggest that jail officials knew about his persistent pain yet delayed treatment by a physician for a substantial period").

By the same token, medical attention may be so deficient that it amounts to deliberate indifference. Although courts will not second-guess medical decisions, an official cannot immunize himself in every case by simply pointing out that a nurse or

doctor reviewed a file or spent a few moments with a prisoner.[2] At some point, the line between regrettable medical negligence and constitutionally inadequate medical care is crossed.[3] *See, e.g., Criollo v. Milton*, 414 Fed. App'x. 719, 721 (5th Cir. 2011) (vacating district court's dismissal of complaint because allegations that nurse failed to follow instructions outlining prisoner's prescribed treatment were sufficient to allege deliberate indifference rather than mere negligence); *Shepherd v. Dallas County*, 591 F.3d 445, 453 (5th Cir. 2009) (finding a constitutional violation where "the jail's evaluation, monitoring, and treatment of inmates with chronic illness was, at the time of Shepherd's stroke, grossly inadequate due to poor or non-existent procedures and understaffing of guards and medical personnel"); *Monceaux v. White*, 266 Fed. App'x. 362, 364 (5th Cir. 2008) (affirming denial of summary judgment where plaintiff's wound was treated over five days by five nurses who each "cleaned the area, applied an antibiotic ointment, and bandaged his thumb," but who failed to notify doctor, even though "[the] thumb became progressively worse"); *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) (defendant's failure to call an ambulance for almost two hours while plaintiff lay unconscious and vomiting rose to level of deliberate indifference); *Lawson v. Dallas County*, 286 F.3d 257, 259 (5th Cir. 2002) (paraplegic prisoner established inadequate medical care, even

---

[2]      *See, e.g., Suffal v. Jefferson Parish,* CIV. A. 14-2478, 2015 WL 631452, at *3 (E.D. La. Feb. 13, 2015) ("Defendants may not escape liability merely by providing some treatment to Suffal, if Defendants' failure to provide additional treatment constitutes deliberate indifference.").

[3]      *See, e.g. King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) ("In evaluating the evidence, [courts] must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment.").

though he repeatedly interacted with jail doctors and nurses, had his dressings changed repeatedly, and received basic medical attention).

Courts have found it even more "troubling" when a plaintiff alleges that a jail policy imposed by administrators impacts medical treatment and care, such as a policy imposing a blanket ban on certain prescribed medications without appropriate medical advice and oversight. *See, e.g., Treadwell v. McHenry County, Illinois*, 13 C 50077, 2016 WL 4394514, at *5 (N.D. Ill. June 20, 2016) (denying defendants' motion for summary judgment on qualified immunity, noting, "It is undisputed that Treadwell came into the jail with a valid prescription for Klonopin and that CCS's policy required that Treadwell be taken off of the benzodiazepine and did not provide either an independent medical examination prior to making that decision or a replacement to treat Treadwell's Tourette's Syndrome.").

### D. Individual and Supervisory Liability under § 1983

Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."), *cert. denied*, 564 U.S. 1038 (2011).

However, a supervisor not personally involved in the acts that allegedly deprived the plaintiff of his constitutional rights can still be liable under § 1983, if (1) the supervisor failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *see also Morgan v. Texas Dep't of Criminal Justice McConnell Unit*, 537 Fed. App'x. 502, 509 (5th Cir. 2013) ("A defendant . . . may be held liable for his or her role in a constitutional violation premised on [his] conduct as a supervisor, for example, his or her failure to train."); *Martone v. Livingston*, No. 4:13–CV–3369, 2014 WL 3534696, at *7 (S.D. Tex. July 16, 2014) (Plaintiff could hold TDCJ prison officials liable in supervisory capacity for "creating and approving the dangerous conditions that caused [Plaintiff's] heat stroke, and failing to remedy them.").[4] Further, "[s]upervisory liability may additionally exist 'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002). Under this analysis, customs or widespread practices are akin to official policies. *Cozzo*, 279 F.3d at 289.

---

[4] In this context, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *McCully*, 406 F.3d at 381.

### E.  Qualified Immunity Under Federal Law

Under federal law, public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 106 S.Ct. 1092, 1096 (1986); *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). In conducting a qualified immunity analysis, each defendant's conduct must be examined individually. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

Although qualified immunity is an affirmative defense, a plaintiff "has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009). A plaintiff can meet this burden by alleging facts showing that the defendant committed a constitutional violation and that the defendant's actions were objectively unreasonable in light of the clearly established law at the time those actions were taken. *Atteberry v. Nocono General Hosp*., 430 F.3d 245, 253 (5th Cir. 2005). To be "clearly established," the law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, —— U.S. ——, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015). The Fifth Circuit has taken pains to point out that the "objectively unreasonable" analysis here is not the same as the "deliberate indifference" analysis seen in the Eighth

Amendment context above—"[o]therwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hinojosa v. Livingston*, 807 F.3d 657, 672 (5th Cir. 2015).

As the Fifth Circuit has explained, "[a] plaintiff seeking to overcome" a defense of immunity to suit "must plead specific facts that . . . allow the court to draw the reasonable inference that . . . defeat[s]" the defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (regarding qualified immunity). Only "[a]fter the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,'" may it issue a "narrowly tailored" discovery order. *Id.; see Wicks v. Miss. State Emp't Svcs.*, 41 F.3d 991, 994 (5th Cir. 1995) ("Discovery . . . must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.").

### F. Municipal Liability under § 1983

A municipality such as Brazoria County may be held liable under § 1983 only when the municipality itself causes a constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). This requires the execution of an official city policy or custom that results in the injury made the basis of the § 1983 claim. *Monell*, 98 S.Ct. at 2035–36. Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation

whose "moving force" is that policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

In this context, an "official policy" may be (1) a policy statement, ordinance, or regulation, or (2) "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)); *see also Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). "It follows that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional." *Piotrowski*, 237 F.3d at 579–80. A municipality's policy of inaction despite awareness—constructive or actual—that its policy will cause a constitutional violation may be "'the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

However, a plaintiff must point to more than the actions of municipal employees, he must also normally "identify a policymaker with final policymaking authority." *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003); *see also Piotrowski*, 237

F.3d at 578 ("[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."). In determining whether the plaintiff has properly identified a policy maker, the "court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id*. at 248.

The Court is also mindful that, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. In other words, a custom or policy can stem from a policy statement formally announced by an official policymaker, or it can be demonstrated through a "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Zarnow*, 614 F.3d at 168-69 ("A pattern of conduct is necessary only when the municipal actors are not policymakers"). Such a pattern of conduct requires "similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.... A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city

employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *Peterson*, 588 F.3d at 850. In other words, "[i]t is not enough that an illegal custom exist; municipal policymakers, who are the persons capable of subjecting a municipality to liability, must be chargeable with awareness of the custom." *Milam v. City of San Antonio*, 113 Fed.App'x. 622, 626 n.3 (5th Cir. 2004); *see also Okon v. Harris County Hosp. Dist.*, 426 Fed. App'x. 312, 316 (5th Cir. 2011) ("The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom."). The plaintiff must also allege that the policy at issue was the "moving force," or in other words, the "direct causal link" between the action and the deprivation of constitutional rights. *Piotrowski*, 237 F.3d at 579–80.

## III.    Brazoria County's Motion to Dismiss

Brazoria County contends that it is entitled to dismissal of Plaintiffs' claims against it because (1) Plaintiffs have failed to plead facts showing the existence of an unconstitutional policy or custom, or a persistent widespread practice that has the force of custom; (2) Plaintiffs have failed to identify an official policymaker and failed to allege any facts that would establish liability for the County; (3) Plaintiffs failed to plead any actions directly attributable to the County; (4) Plaintiffs' failure to train claims fail to allege deliberate indifference, *i.e.* a pattern of similar constitutional violations by untrained employees; (5) Plaintiffs' failure to implement claim does not show an intentional choice to violate inmates' constitutional rights.

In response, Plaintiffs contend that their First Amended Complaint alleges enough facts to withstand Brazoria County's Motion to Dismiss. Plaintiffs point to specific

paragraphs in their First Amended Complaint that they claim sufficiently plead municipal liability, such as identifying Gilbert Gardner as the policymaker, and alleging that Brazoria County failed to provide medical care, failed to provide medication, placed a suicidal detainee in isolation, failed to properly categorize Gray as a suicide risk, failed to notify a magistrate of Grays' mental illness, and failed to properly monitor Gray while she was in custody. Plaintiffs also contend they have presented a list of lawsuits that show a pattern of similar violations.

The Court has summarized many of the Plaintiffs' allegations above. Here, the Court notes that Plaintiffs indeed alleged that Brazoria County has established a pattern of failing to provide needed medical care, including medications to alleviate mental illnesses or other medical conditions, but none of the lawsuits they list present similar facts involving a detainee committing suicide after withdrawal from prescription medication. Plaintiffs also allege that Brazoria County failed to properly care for Gray and failed to take the required precautions for a suicidal inmate, pointing out that Gray's arrest and suicide both occurred at night, when Brazoria County "has reduced staffing levels" and that Gray was not provided a paper mattress cover. Finally, the Court also notes that Plaintiffs also allege the existence of a Brazoria County policy that requires "immediate" screening by a nurse on intake. Nonetheless, Plaintiffs allege that this policy was violated and therefore Gray, who was arrested on August 29, 2014, was not subject to medical screening until August 31, 2014.

The touchstone of an analysis of the County's liability in as case such as this, even if a constitutional violation may have occurred, is whether the plaintiffs have alleged: (1)

an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Here, many of Plaintiffs' allegations relate to the individual jail employees' failures to follow existing Brazoria County policies of medical screening, monitoring, and referral of mentally ill detainees. In other words, rather than pointing to a Brazoria County policy, custom, or practice that caused the death of Gray, the crux of the Plaintiffs' claims here is that jail employees and contractors failed to follow the policies that did exist.

Additionally, Plaintiffs fail to point to a proper policymaker. Plaintiffs allege that Defendant Gardner, the captain on duty, was the person "to whom the County had delegated decision and policymaking authority." But this allegation runs contrary to Texas law. "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). As Chief Judge Lee H. Rosenthal recently noted, "Under [Texas] law, a sheriff is the county policymaker for law enforcement, including for county jails." *Odonnell v. Harris County, Texas*, CV H-16-1414, 2016 WL 7337549, at *29 (S.D. Tex. Dec. 16, 2016) (citing *County of El Paso v. Dorado*, 180 S.W.3d 854, 870 (Tex. App.–El Paso 2005, pet. denied)). "[I]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement by virtue of the sheriff's election to office." *Id*. (citing *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 244 n.35 (5th Cir. 1993) (quoting *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990))).

Accordingly, after a review of all of Plaintiffs' allegations in its First Amended Complaint, the Court finds that Brazoria County's motion to dismiss should be **GRANTED**.

### IV. Defendant Gardner's Motion to Dismiss (Dkt. 33) and Motion to Stay Discovery (Dkt. 34)

Next, the Court turns to the individual Brazoria County employees. Defendant Gardner has filed a motion to dismiss the claims against him on the grounds of qualified immunity. In order to defeat Gardner's assertion that the claims against him should be dismissed, Plaintiffs have the burden of pleading "enough facts to state a claim for relief that is plausible on its face." *Saenz v. Flores*, 15-50119, 2016 WL 4750908, at *1 (5th Cir. Sept. 12, 2016) (per curiam) (analyzing district court's denial of motion to dismiss on grounds of qualified immunity under standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Gardner also asks that this Court stay all discovery immediately in light of his assertion of the qualified immunity defense.

The Court first examines whether the Plaintiffs have adequately pled facts that, if assumed to be true, "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Plaintiffs' First Amended Complaint alleges that "Gardner was the on-duty Captain at the time of the suicide of Victoria Gray, and in charge of the jail. It is believed that Defendant Gardner was the policymaker for Brazoria County who decided whether Victoria Gray would be deprived of her medications,

housed in an isolation cell, and not placed on suicide watch." Dkt. 18, pg. 4. Plaintiffs allege that this decision to place Gray in isolation was a proximate cause of her death. Dkt. 18, pg. 6. Plaintiffs further allege that Gardner had reports from jail officers "available to [him]", detailing Gray's risk of suicide, requests for her medications, and attempts at self-harm, but he failed to correct the obvious errors of his jail staff and thus "ratified, condoned and permitted the lack of constitutionally mandated medical care." Dkt. 18, pg. 13, 14. Generally, Plaintiffs also allege that Gardner "failed to use skill and good judgment in refusing to provide Victoria Gray with needed medication that had been court-ordered; [failed] to use skill and good judgment in placing Victoria Gray in isolated confinement where continuous monitoring was inconvenient, difficult or impossible; [failed to] remove all possible tools for suicide from Victoria Gray's jail cell; and [spoiled or altered] government records." Dkt. 18, pg. 12.

After reviewing the First Amended Complaint, the Court finds that Defendant Gardner's motion to dismiss should be **GRANTED**. The Plaintiffs have failed to plead facts that allow the Court to draw the reasonable inference that the Defendant Gardner is liable for the misconduct alleged under the relevant caselaw. Although a risk of suicide is indeed a substantial risk to a detainee's safety, the Plaintiffs have failed to allege facts that, if true, would show that Defendant Gardner had the requisite subjective knowledge of that risk to Gray, or that he was then "deliberately indifferent" to that risk or to any other risk of substantial harm to Gray. *See, e.g., Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet."); *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000)

("[T]o be considered deliberately indifferent to a known suicide risk, an officer's acts must constitute at least more than a mere 'oversight.'"). Unlike the plaintiff in *Hyatt v. Thomas*, 843 F.3d 172, 179–80 (5th Cir. 2016), the Plaintiffs here do not allege that Defendant Gardner subjectively knew about the risk to Gray but nonetheless failed to take reasonable steps to mitigate that risk. *Id*. at 177 (noting that, in *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained that deliberate indifference to an inmate's needs in violation of the Eighth Amendment requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

In the same vein, the Court notes that Plaintiffs' allegations do not set out facts supporting a finding of supervisory liability for Defendant Gardner. *See, e.g., Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."), *cert. denied*, 564 U.S. 1038 (2011).

Even if the Court were to find that Plaintiffs had pled sufficient facts to raise a plausible claim against Defendant Gardner, the Plaintiffs have failed to plead sufficient facts to overcome Gardner's assertion of qualified immunity here. Even with all reasonable inferences being taken in their favor, the Plaintiffs' allegations do not set out any facts that even raise the possibility that Gardner's pled actions or omissions were "objectively unreasonable" under "clearly established law." Accordingly, the Court

hereby **GRANTS** Defendant Gardner's Motion to Dismiss, and **DENIES** Defendant Gardner's Motion to Stay as moot.

### V. Defendants Gonzalez's and Gragert's Motion to Dismiss (Dkt. 35) and Motion to Stay Discovery (Dkt. 36)

The Court will follow a similar pattern in its analysis of Defendants Gonzalez's and Gragert's Motion to Dismiss. Plaintiffs' specific factual allegations against Defendant Gonzalez are that she was "the Deputy Jailer, and employee of Brazoria County, who was responsible for checking on Victoria Gray at the time of her death." Dkt. 18, pg. 3. Plaintiffs next allege that "Defendant Nancy Gragert, was the Deputy Jailer, and employee of Brazoria County, who was responsible for checking on Victoria Gray immediately before her death." Dkt. 18, pg. 3. Plaintiffs allege that, "either or both" of these Defendants failed to continuously monitor Victoria Gray, and at the time of her suicide, Gray had been left alone in her cell for "at least twenty minutes." Dkt. 18, pg. 9. As with Gardner, Plaintiffs generally claim that Gonzalez and Gragert "failed to use skill and good judgment in refusing to provide Victoria Gray with needed medication that had been court-ordered; [failed] to use skill and good judgment in placing Victoria Gray in isolated confinement where continuous monitoring was inconvenient, difficult or impossible; [failed to] remove all possible tools for suicide from Victoria Gray's jail cell; and [spoiled or altered] government records." Dkt. 18, pg. 12.

Do these allegations satisfy Rule 8(a) and *Twombly* by presenting sufficient contend to allow the court to draw a reasonable inference that Defendants Gonzalez and Gragert committed "acts or omissions [that were] sufficiently harmful to evidence

deliberate indifference to serious medical needs?" *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). At the present time, the answer is no.

The Fifth Circuit has pointed out the difficult task for counsel and courts in cases such as this—"[W]hile . . . the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be." *Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016) (internal citations omitted). "What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability." *Id.* (citing *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)).

Plaintiffs have alleged that these two Defendants had close, proximate interactions with Gray, and that Gray either told them affirmatively that she was a risk of suicide or that they knew she has a risk to herself but failed to report the risk or take any steps to mitigate the potential harm. Guided by *Hyatt*, the Court finds that Plaintiffs should be allowed an opportunity to cure these deficiencies as to Defendants Gonzalez and Gragert. Accordingly, Plaintiffs may file a proposed amended complaint that sets out sufficient facts as to these Defendants, as well as a Rule 7(a) Reply that is "tailored" to the assertion of qualified immunity by Defendants Gonzalez and Gragert. *See, e.g., Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc). Plaintiffs may file these as a single document, or as two separate filings. Either way, Plaintiffs should allege facts regarding the actions and omissions of Defendants Gonzalez and Gragert, including facts that, if true, would show that these Defendants knew of but disregarded a serious medical need or a substantial risk

to Gray's safety. Similarly, Plaintiffs should plead facts that, if true, would overcome the Defendants' assertion of qualified immunity and show that the alleged actions of these Defendants were objectively unreasonable under clearly established law at the time.

Once Plaintiff files these documents, Defendants Gonzalez and Gragert may file a short response. The Court will then consider these new filings as part of its analysis of Defendants Gonzalez's and Gragert's Motion to Dismiss. In the meantime, the Court hereby **GRANTS** Defendants Gonzalez and Gragert's motion to stay discovery.

### VI. Defendants J. Allen & Associates, LLC, Billups, Sandoval, and Garrido's Motion to Dismiss (Dkt. 52)

Defendants J. Allen & Associates, Billups, Sandoval, and Garrido ("the Medical Provider Defendants") also seek dismissal of Plaintiffs' claims against them under Rule 12(b)(6). The Medical Provider Defendants allege that Plaintiffs have failed to allege sufficient facts to plead a plausible claim against them for violation of Gray's constitutional rights. J. Allen & Associates first contends that Plaintiffs have alleged only vicarious liability against it for employing the nurses on duty at the time Gray was in custody. The Court agrees. Plaintiffs allege that J. Allen & Associates was obligated to provide a certain number of nurses at particular times, but they do not allege that these nurses were not provided. There are no other specific factual allegations against J. Allen & Associates.

Next, the Court reviews the allegations against the individual nurses. Defendant Billups is alleged to have performed Gray's medical intake on August 31, 2014, and despite a determination by Defendant Billups that Gray was a suicide risk, Gray was not

put on suicide watch. Plaintiffs do not allege, however, that it was Defendant Billups' responsibility to place Gray on such a watch, or what specific steps Defendant Billups failed to take. Plaintiffs also generally allege that Defendant Billups "fail[ed] to follow Victoria Gray's progress, to assure that she was provided her medication and appropriate classification as a 'maximum risk' suicide watch detainee." Dkt. 18, pg. 8. As with the Brazoria County Defendants, Plaintiffs generally allege that the Medical Provider Defendants "[failed] to provide needed and reasonable medical care to Victoria Gray; [delayed] medical intake which determined that Victoria Gray was a suicide risk and needed medication for treatment of her mental condition; [delayed or failed] to provide medications which were immediately available and needed for treatment of Victoria Gray's mental condition; [failed] to provide for continuous suicide monitoring of Victoria Gray, a known suicide risk; [failed] to adequately train infirmary staff that a known suicide risk should not be placed in isolation, where continuous monitoring is difficult, inconvenient or impossible; [failed] to adequately train infirmary staff that pre-trial detainees like Victoria Gray should be provided with needed medication, especially in the case where the medication was court-ordered; [and were] deliberately indifferent in failing to create and implement policies, standards and procedures for the protection of persons who are known suicide risks, including immediate intake evaluation, and provision of necessary medications." Dkt. 18, pg. 12. But Plaintiffs do not allege that these tasks were the responsibility of Defendants Billups, Sandoval, and Garrido.

Again, the Court finds the *Hyatt* case highly instructive. In *Hyatt*, the plaintiff alleged that the nurse defendant knew the pretrial detainee was suicidal and took some

measures to protect him, but she failed to remove a plastic bag from the cell. The district court granted the nurse defendant's motion for summary judgment. The Fifth Circuit affirmed, finding that, while there may have been some evidence that the nurse knew of the risk of harm to the detainee, she was not "deliberately indifferent" because she did not fail to take reasonable measures to abate it. *Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016) (noting, "She withheld from Hyatt the most obvious means for self-harm and placed him under continuous, if ultimately imperfect, video surveillance. Thomas also took care to inform her relieving officer that Hyatt was a potential suicide risk and that he needed to be observed; it was not until after that officer was relieved that Hyatt hanged himself. It is uncontested that she had no knowledge of the presence of the plastic bag in Hyatt's cell."). Here, Plaintiffs have presented only the most general reasons for alleging that Defendants Billups, Sandoval, and Garrido were deliberately indifferent to the risk of harm of suicide posed to Victoria Gray. Other than the intake by Defendant Billups, there are no specific allegations as to how these Defendants were deliberately indifferent to Gray in the manner required by caselaw. *Compare, e.g., Rogers,* 709 F.3d at 409 (noting "deliberate indifference" requires a prisoner to allege that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'").

For the foregoing reasons, and because these Medical Provider Defendants have only recently been added to the case, the Court will allow Plaintiffs to file a proposed amended complaint that sets out sufficient facts as to Defendants J. Allen & Associates,

Billups, Sandoval, and Garrido, as well as a Rule 7(a) Reply that is "tailored" to the assertion of qualified immunity by Defendants J. Allen & Associates, Billups, Sandoval, and Garrido. *See, e.g., Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc). Plaintiffs may file these as a single document, or as two separate filings. Either way, Plaintiffs should allege facts regarding the actions and omissions of Defendants J. Allen & Associates, Billups, Sandoval, and Garrido, including facts that, if true, would show that these Defendants knew of but disregarded a serious medical need or a substantial risk to Gray's safety. Similarly, Plaintiffs should plead facts that, if true, would overcome the Defendants' assertion of qualified immunity and show that the alleged actions of these Defendants were objectively unreasonable under clearly established law at the time.

Once Plaintiff files these documents, Defendants J. Allen & Associates, Billups, Sandoval, and Garrido may file a short response. The Court will then consider these new filings as part of its analysis of the Motion to Dismiss filed by Defendants J. Allen & Associates, Billups, Sandoval, and Garrido. In the meantime, the Court hereby **GRANTS** the motion to stay discovery as to Defendants J. Allen & Associates, Billups, Sandoval, and Garrido.

## CONCLUSION

Plaintiffs' claims under the Fourth and Eighth Amendments against all Defendants are, hereby, **DISMISSED**. These claims are dismissed **with prejudice** because it appears that no relief can be granted under the facts alleged. *See e.g., McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998).

Brazoria County's Motion to Dismiss (Dkt. 21) is **GRANTED**. Plaintiffs' claims against Brazoria County are, hereby, **DISMISSED.**

Further, Defendant Gardner's Motion to Dismiss (Dkt. 33) is **GRANTED**, and Defendant Gardner's Motion to Stay (Dkt. 34) is **DENIED as moot**. Plaintiffs' claims against Defendant Gardner's are, hereby, **DISMISSED.**

For the reasons stated above, the Court will take the Motions to Dismiss (Dkt. 35, 52) filed by Defendants Gonzalez and Gragert and Defendants J. Allen & Associates, Billups, Sandoval, and Garrido under advisement at this time. **Within 10 days of the issuance of this Memorandum Opinion and Order**, Plaintiffs may file a proposed amended complaint that sets out sufficient facts as to these Defendants, as well as a Rule 7(a) Reply that is "tailored" to the assertion of qualified immunity by these Defendants. *See, e.g., Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc). After Plaintiff files these documents, these Defendants may file a short response within **five days**. The Court will then consider these new filings as part of its analysis of the Motions to Dismiss. In the meantime, the Court hereby **GRANTS** the motions to stay discovery (Dkt. 36, 52) as to these Defendants.

In light of the procedural posture of this case, and the stays of discovery herein, the court further **ABATES** the pending deadlines in this case. The Unopposed Motion for Extension (Dkt. 54) of Time is therefore **DENIED** as moot.

SIGNED at Galveston, Texas, this 23rd day of February, 2017.

George C. Hanks Jr.
United States District Judge