**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON  DIVISION**

| | |
|---|---|
| **JOHN GRAY, individually and as the representative of the Estate of Victoria Gray(deceased),** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 3:16-cv-109** |
| | **(JURY DEMANDED)** |
| **BRAZORIA COUNTY,  Gilbert Gardener, Nancy Gragert, Viviana Gonzalez, J. Allen & Associates, LLC, Laronda Billups, Sandra Sandoval, Sherry Garrido and unknown Employees of the Brazoria County Detention Center** | |
| **Defendants.** | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW John Gray, Plaintiff, individually and in his capacity as the representative of Victoria Gray (deceased), and Crystal Gray Sandiford, individually and as the representative of Victoria Gray (deceased), and files this their Complaint for causes of action against Defendants Brazoria County, Gilbert Gardner, Viviana Gonzalez, Nancy Gragert, J. Allen and Associates, LLC, Laronda Billups, LVN, Sandra Sandoval RN, Sherry Garrido, LVN, and unknown employees (herein after referred to as "Detention center Staff"  and would show this Court and jury as follows:

**I. NATURE OF THE CASE**

1.    This case is brought to redress the deprivation, under color of state law, ordinance, regulation, and custom or usage, of rights, privileges and immunities secured

to Plaintiff under the   Eighth and Fourteenth Amendments of the United States Constitution via 42 U.S.C. Section 1983.

2.      Further, this case is brought under the Texas Wrongful Death Statute, Tex. Civ Prac & Rem Code 71.003, *et seq*, and Texas Survival Statute, Tex. Civ. Prac. & Rem. Code 71.021 et seq.

## II. PARTIES

3.      The Plaintiff, John Gray is a citizen of the State of Texas and a resident of Brazoria County. Plaintiff John Gray is the natural father of Victoria Gray, and the representative of her Estate.

4.      The Plaintiff, Crystal Gray Sandiford is a citizen of the State of Texas and a resident of Brazoria County. Plaintiff Crystal Sandiford is the natural mother of Victoria Gray.

5.      Defendant Brazoria County is a governmental entity organized under the laws of the State of Texas and is a "person" under 41 USC 1983, and acted at all times material hereto under color of law. Defendant has been served. No further service is necessary at this time.

6.      Defendant J. Allen and Associates of Texas, LLC is an entity formed under the laws of the State of Texas, and a Texas resident. Defendant "Allen & Assoc." was the contractor providing health care services to inmates and detainees in the Brazoria County Detention Center at the time material hereto. Defendant Allen & Assoc. was the direct employer of Defendants Billups, Sandoval and Garrido. Defendant Allen & Assoc. has been served. No further issuance of citation is necessary.

7.      The following individual defendants are sued in their individual capacities for acts performed and omissions, acting under color of law.

8.      Defendant Viviana Gonzalez was the Deputy Detention centerer, and employee of Brazoria County, who was responsible for checking on Victoria Gray at the time of her death. She has been served. No further issuance of citation is necessary..

9.      Defendant Nancy Gragert, was the Deputy Detention centerer, and employee of Brazoria County, who was responsible for checking on Victoria Gray immediately before her death. She has been served. No further issuance of citation is necessary..

10.     Defendant Laronda Billips, LVN, was responsible for the medical screening of Victoria Gray following her arrest, and was responsible for providing medical care and treatment to Victoria Gray while she was detained in the Brazoria County Detention Center. She is believed to be an employee of J. Allen, and borrowed employee of Brazoria County. She has been served. No further issuance of citation is necessary.

11.     Sandra Sandoval, RN, was responsible for providing medical care and treatment to Victoria Gray while she was detained in the Brazoria County Detention center. She is believed to be an employee of J. Allen and borrowed employee of Brazoria County. She has been served. No further issuance of citation is necessary.

12.     Defendant Sherry Garrido, LVN was responsible for providing medical care and treatment to Victoria Gray while she was detained in the Brazoria County Detention center. She is believed to be an employee of J. Allen and borrowed employee of Brazoria County. She has been served. No further issuance of citation is necessary.

13.     Defendant Gilbert Gardner was the on-duty Captain at the time of the suicide of Victoria Gray, and in charge of the detention center.  It is believed that Defendant Gardner was the policymaker for Brazoria County who decided whether Victoria Gray would be deprived of her medications, housed in an isolation cell, and not

placed on suicide watch. Defendant Gardner has been served. No further issuance of citation is necessary..

14.     Defendants "Unknown Employees" are the detention center and infirmary staff on duty in the time period August 29, 2014 to September 02, 2014, who were charged with the care of Victoria Gray. As discovery progresses, these persons will be added and additional citation requested.

### III. JURISDICTION & VENUE

15.     This case is brought under the Eighth and Fourteenth Amendments of the United States Constitution via 42 U.S.C. Section1983.  The Court has jurisdiction of the federal causes of action under 28 U.S.C. Sections1331 (federal question) and 1343 (civil rights).

16.     The Court has jurisdiction over Defendants under 28 U.S.C. Section 1367(a). All of the named defendants reside in the State of Texas and the Southern District of Texas.

17.     Venue is proper in the Southern District of Texas—Galveston Division under 28 U.S.C. Section 1391(b)(2). The unlawful practices occurred in the Southern District of Texas—Galveston Division; the records relevant to such practice are maintained and administered in the Southern District of Texas—Galveston Division; and the Plaintiff and Defendants are located in the Southern District of Texas—Galveston Division.

### IV.  EXHAUSTION OF ADMINISTRATIVE PROCEDURES

18.     All other conditions precedent have been performed or have occurred.

### V.  JURY DEMAND

19.     Plaintiff demands a jury trial on all issues so triable.

## VI.   STATEMENT OF THE CASE

20.     Victoria Gray is the natural daughter of John Gray and Crystal Gray Sandiford. At age seventeen she began having emotional and mental issues that conflicted with the law. She was arrested on or about March 11, 2013 and incarcerated until April 04, 2013 for assault. She was again arrested on or about January 31, 2014 for another assault. While in detention center in 2014, she attempted suicide. She was discovered hanging from her detention center cell in the Brazoria County Detention Center. The staff was able to save her life, and she was subsequently committed to the Austin State Hospital for evaluation and treatment.

21.     Following her release from the Austin State Hospital in April of 2014, she was required, as a condition of her probation, to take anti-depressant medications and given a curfew. She was required to present for blood tests to confirm that she was taking her required medications. Among the medications prescribed and required by Court Order were Klonopin (Clonazepam), and Trazodone.

22.     Klonopin is a medication used to prevent and treat seizures and certain panic disorders. It is a tranquilizer and is highly addictive. Long-term use may result on tolerance, dependence and severe withdrawal symptoms if stopped abruptly. Dependence occurs in one-third of people who take the medication for longer than four weeks. Abrupt withdrawal from the medication is strongly contraindicated and appropriate warnings are prominently displayed in the prescribing information for health care professionals.

23.     Trazadone is an antidepressant used to treat major depression. Trazadone is highly addictive. Abrupt withdrawal from the medication is strongly contraindicated and appropriate warnings are prominently displayed in the prescribing information for health

care professionals.

24.     Subsequent to her release from the Austin State Hospital, Victoria Gray was also prescribed Divalproex (Depakote). This medication is used to treat epilepsy and bipolar disorder when other medications have failed. The medication has mood stabilizing properties. Abrupt withdrawal from the mediation is strongly contraindicated and appropriate warnings are prominently displayed in the prescribing information for health care professionals.

25.     When a person who is physiologically dependent on any of these medication abruptly stops taking the medication, he or she can go into withdrawal. Withdrawal from Trazodone in persons of the same age group as Victoria Gray have an increased risk of suicidal thoughts or actions. All reasonable health care providers, including those in the field of corrections, are aware of the risks of withdrawal from these medications and its potentially fatal consequences. Withdrawal symptoms may begin after only a few hours following a missed dose.

26.     When Victoria Gray violated both conditions of her probation, she was re-arrested on August 29, 2014. When apprehended she was carrying two prescription medications, one of which was Trazodone. The medications that she had on her person were taken to the infirmary, and immediately available to clinic staff – but she was denied access to them.

27.     Upon intake, on August 29, 2014, she was already exhibiting symptoms of withdrawal. The intake records that she was tearful and delusional – believing speakers were being pulled through her ears, was depressed and hearing things. She reported that she had previously attempted suicide two months earlier. She was determined to be a suicide risk. Intake Officer Kresta Tate scored her as a "maximum risk" for suicide.

- 6 -

However, the Magistrate was not notified as required by Texas Code of Criminal Procedure Section 16.22. Because Victoria Gray was disruptive, exhibiting violent and irrational behavior, she was placed in isolation, a cell intended for low risk inmates.

28.     Isolation is rarely a safe place for a suicidal detainee or inmate. Isolation increases depression and the likelihood of suicidal ideation. Isolation also allows the person the privacy to construct implements of self-harm. Brazoria County's decision, made or ratified by the onsite policymaker on duty, Defendant Gardner, to place Victoria Gray in isolation, was a proximate cause of her death.

29.     Brazoria County has a policy applicable to the detention center that requires "immediate" medical screening. Intake is initially done by a trained law enforcement officer. The follow-up medical screening is to determine what, if any, immediate medical needs each detainee or inmate requires. Diabetics need insulin. Persons in wheelchairs may need catheters, or colostomy bags. Persons with broken bones may need care at a hospital. Because the variety of persons who are apprehended is extremely wide, the medical screening is an integral process of the provision of detention services that meet constitutional standards prohibiting cruel and unusual punishment.

30.     On August 29th, Victoria Gray was not provided with a medical screening. However, she was determined to be a "maximum" risk for suicide. She was not referred to the Austin State Hospital, where she had been previously incarcerated and treated. The Magistrate was not notified that a referral was necessary. Her medications were taken from her and withheld.

31.     On August 30th, Victoria Gray confronted a detention center officer, Officer Bailey. She requested that she be given her medications – the same ones that she had

in her possession when she was arrested, and the same ones that she was court-ordered to take. When Officer Bailey told her she would have to wait for medical screening, Victoria Gray struck her head against the wall. An inmate crisis report was generated.

32.     Although she had injured herself, on August 30th, Victoria Gray was not referred to the medical clinic. She was not medically screened on August 30th.

33.     The medical screening was performed by Laronda Billups, LVN, on August 31st. Victoria Gray was having auditory and visual hallucinations at the time of the screening. Laronda Billups was responsible for reporting her observations to her supervising RN. She did not do so. Laronda Billups was responsible for initiating a treatment plan that would protect Victoria Gray from readily foreseeable attempts to self-harm. She did not do so. Laronda Billups was responsible for consulting with appropriately licensed health care practitioners concerning medications needed by Victoria Gray. She ignored Victoria Gray's history of suicidal attempts. She delayed consulting, and delayed providing medications although the medications were readily available in the medical clinic (having been brought in by Victoria Gray). Each of these failures was deliberately indifferent to the known medical needs of Victoria Gray which posed a substantial risk of harm to her.

34.     The persons staffing the medical clinic at the Detention Center during the relevant period were Sandra Sandoval, RN, Laronda Billups, LVN, and Sherry Garrido, LVN. State law prescribes a hierarchy of responsibility for nurses attending to a patient. This hierarchy requires that the LVNs report and be supervised by the RN. LVNs cannot function independently and only function under the RN's delegation and supervision.

a) Sherry Sandoval was the person responsible for the "immediate" medical

screening. The three day delay between arrest and medical screening is circumstantial evidence of Sherry Sandoval's deliberate indifference to the medical needs of Victoria Gray.

b) Sherry Sandoval was the person responsible for notifying the Magistrate that a person needing a referral to MHMR was in the detention center. The referral to the Magistrate did not take place until September 3, 2014 – after Victoria Gray's death. On September 3, 2014, a total of ten detainees were referred by the Magistrate to MHMR for assessment. The delay in notifying the required authorities is further evidence of a deliberate indifference to the substantial risk posed by Victoria Gray's mental disorder, that is: her well-known suicide risk.

c) Sherry Sandoval was the person who was responsible for beginning appropriate nursing interventions, including providing medications, which were required to stabilize Victoria Gray's condition and prevent further harm – in this case another suicide attempt. Victoria Gray was arrested with necessary medications. The medications were forwarded by the jailers to the medical clinic. Sherry Sandoval was responsible for being knowledgeable about the prescriptions, both their existence and their significance. The delay in acquiring a consultation on the appropriateness of continuing her medication is further evidence of a deliberate indifference to the substantial risk posed by Victoria Gray's mental disorder.

d) Sherry Sandoval had actual knowledge that Victoria Gray's needed medications were being withheld. A Physician's Assistant, without examining Victoria Gray, authorized the continuation of the medications Victoria Gray had in her possession when arrested on August 31st. However, no medications

were provided to Victoria Gray until September 02. The medication provided was different than the ones Victoria Gray had been taking. As the RN in charge of the provision of medications to detainees and inmates, Sherry Sandoval knew that the medication was different. Delaying medication, and providing a different medication without a doctor's order, were performed or failed to be performed with deliberate indifference.

e) In the acts and omissions detailed in (a) through (d) above, Sherry Sandoval refused to treat Victoria Gray (did not provide medical screening, did not provide medications), ignored Victoria Gray's complaints (auditory and visual hallucinations, claims of self-harm), and treated Victoria Gray incorrectly (delaying medical screening, delaying provision of medications, depriving Victoria Gray of medications that she was court-ordered to take). This is deliberate indifference to the welfare of Victoria Gray which violates the Eighth and/or Fourteenth Amendments.

35.    No information is available about what, if anything, happened to Victoria Gray on September 01, 2014.

36.    On September 2, 2014, Victoria Gray was given some medications by Sherry Garrido, LVN. As a licensed practitioner of the healing arts, Sherry Garrido had a responsibility to monitor the condition of Victoria Gray. Sherry Garrido had actual knowledge of the delay in providing medication required by court order for the treatment of Victoria Gray's mental disorder. She is required to have knowledge of the significance of delay and possibility of withdrawal from the medications. She is required by the Texas Board of Nursing to accurately and completely record and report to her supervising RN the condition of Victoria Gray, and her response to medication. She is required to obtain

instruction and supervision when implementing nursing care. She did not do so. Sherry Garrido had actual knowledge that Victoria Gray was a "maximum" suicide risk. Her failure to observe, record and report Victoria Gray's condition was deliberate indifference to a substantial risk of harm to Victoria Gray that delaying her medication and treatment would cause.

37.     Although apprehended on August 29, 2014, Victoria Gray was not subjected to medical screening until August 31, 2014. During that time, she attempted to harm herself, and asked deputies to "Just kill me". On August 30, 2016, she told Deputy Bailey that she needed her medications. Deputy Bailey responded that she had to wait until she was medically evaluated. Victoria Gray struck her head on the wall multiple times in response. Deputy Bailey reported to her Supervisors in writing that there had been an inmate crisis – an attempted suicide on August 30, 2014, by Victoria Gray. The inmate crisis report is required by Brazoria county policy to be provided to the Captain on duty. This requirement is significant because it engages at least 3 levels of governmental oversight, the detention center staff, the medical staff, and the policymaking staff. No action was taken upon this report. Victoria Gray was not taken to the medical clinic for care. No change was made in her assignment to a low risk isolation cell despite being a "maximum" suicide risk and despite having attempted self-harm.

38.     Victoria Gray was incarcerated in a single lower risk cell, and not put on suicide watch. The lower risk cell was an inappropriate assignment for this detainee. The lower risk cell was subject to 30 minute scrutiny, and not continuous scrutiny as would be appropriate for a suicidal detainee who is at "maximum risk". The cell was not stripped of implements of self-destruction.

39.     Throughout the evening of September 02, Defendant Gragert was assigned

to observe the cell containing Victoria Gray. Defendant Gragert came on duty not later than 7:16 pm, and reported that she scanned each cell check until Victoria Gray was found hanging. These scans conflict with the duty roster which shows an officer with the name of Peltier responsible for cell checks at 7:45pm, 7:59 pm, 9:28 pm, and Vivianna Gonzalez responsible for cell checks at .8:30 pm and 10:02 pm.  Both Vivianna Gonzalez and Nancy Gragert report, in different documents, that they checked Victoria Gray's cell at 10:02 pm. Victoria Gray was discovered by Vivianna Gonzalez, hanging, at approximately 10:30 pm.

40.     It is believed that one or both of these reports are falsified. There are two bases for disbelief. First, the defibrillator that was used to attempt to resuscitate Victoria Gray refused to activate – indicating that she was already dead when discovered. This is a feature of the machine and could not be faked. Second, upon being delivered to the hospital, her core body temperature indicates that she had been dead for a longer period of time than a check at 10:02 pm would have disclosed. That is, she was dead before 10:02 pm.

41.     Vivianna Gonzalez and Nancy Gragert had actual knowledge from their review of the detention center records that Victoria Gray was a "maximum" suicide risk. Both defendants had actual knowledge that the cell Victoria Gray was held in was not appropriate for a detainee or inmate who is a suicide risk. Victoria Gray was not in an observation cell with continuous monitoring. She was provided with a mattress cover that could be used as a ligature. The cell had a towel rack that could be used to support a hanging noose. Both Defendants had actual knowledge of the long periods between observations. Neither Defendant withheld from Victoria Gray the most obvious means for self-harm, the mattress cover or the towel rack. Neither Defendant cautioned others that

Victoria Gray required greater observation, or more specific suicide prevention methods.

42.    Brazoria County Detention Center is run by the county through its law enforcement officials. The Detention Center serves the cities, county, and state law enforcement entities who may arrest or detain persons within the geographical limits of Brazoria County. The Detention Center's operation, except for financial support, and inter-agency agreements, is delegated to the Captain in charge of the Center. Implementation of the written policies adopted for the Detention Center is delegated to the Captain in charge of the Center. The Captain in charge of the Center is responsible for deciding the goals of the facility, devising a means to meet the goals, and acts in the place of the governing body in running the facility and implementing its policies. During the events that are the subject of this suit, the Captain was Defendant Gilbert Gardner.

43.    Defendant Allen has been the contractor who provides medical services in the Brazoria County Detention Center since 2010. In the relevant time frame, Defendant Allen was obligated to provide two Registered Nurses 24 hours and 7 days a week, four LVNs during day hours seven days a week, and two LVNs during night hours, seven days a week, management services and psychiatric services. Brazoria County policy for the Detention Center requires "immediate" screening by a nurse on intake. The medical screening is required to be made by Defendant Allen and its employees. Victoria Gray was not screened on the day of her arrest, August 29th. Victoria Gray was not screened on the day she injured herself, August 30th. Victoria Gray was finally screened on August 31st, but was not given prescribed and court-ordered medication, or put on a suicide watch. Defendant Allen had no substitute practice in place for determining care needs if medical screening was not immediately available to newly arrived detainees or inmates.

44.    Brazoria County detention center has available cells that do not contain

beds or towel racks. Brazoria County detention center has available cells that can be continuously monitored. These cells are designed to eliminate the structural elements needed to self-harm. Victoria Gray was not assigned to one of these suicide prevention cells.

45.     Both Defendant Gragert and Gonzalez were deliberately indifferent in their lack of care to prevent Victoria Gray's foreseeable suicide. Victoria Gray's suicide could have been prevented by continuous monitoring, removing the mattress cover, or removing the towel rack, or by placing her in a cell designed for such prevention. This lack of action is more than mere negligence. This is a complete absence of care, although the defendants were actually knowledgeable about the substantial risk of harm, her previous attempts at suicide, and had the means available to prevent that risk.

46.     Upon admission to any correctional facility, it is essential to identify any person who may be using Trazodone and Klonopin in order to prevent serious complications from abrupt withdrawal. A person's medications should never be abruptly discontinued or even reduced without a carefully considered and controlled plan of gradual dose reduction under the guidance of trained medical persons, with close medical monitoring in an appropriate setting. Medical and non-medical staff must also be made aware of the signs, symptoms and potentially fatal consequence of withdrawal. Symptoms can include abnormal vital signs, acute GI distress, sleep disturbance, severe anxiety and panic, mood swings, paranoia, extreme restlessness, disruptive behavior, agitation, tremors, hyperthermia, excessive perspiration, bizarre behavior, confusion, cognitive difficulties, hallucinations, delirium, psychosis and seizures. Victoria Gray's violent and irrational behavior recorded on August 29th, 30th and 31st, is consistent with withdrawal from these medications.

47.    When arrested on August 29, 2014, Victoria Gray was in possession of two bottles of lawfully prescribed medications which she had been ordered to take. Over the following four days, these medications were withheld. Defendants' decision to withhold medication from her, and delay medication once authorized, was a proximate cause of Victoria Gray's death.

48.    On August 31, 2014, medical screening was performed by Defendant Billups, who is an LVN. Defendant Billups determined that she was a suicide risk. Victoria Gray exhibited symptoms of withdrawal, auditory and visual hallucinations, emotional instability, depression, numbness in the abdomen, and wounds from attempted self-harm. However, Victoria Gray was returned to isolation in a low risk cell, not provided her medications, and not put on suicide watch. Defendant Billups', Sandoval's and Garrido's failure to monitor Victoria Gray's condition and progress, to assure that she was provided her medication, and appropriately classified as a "maximum risk" suicide watch detainee was a proximate cause of her death.

49.    Victoria Gray was found hanging in her cell on September 02, 2014 by Vivianna Gonzalez. The Death in Custody report was generated at 2125 hours (9:25 pm). However, the records show she was found at 2230 hours (10:30 pm). The last face to face contact alleged was at 2202 hours (10:02 pm). Despite the discrepancy in the records, she had been left alone for at least twenty minutes. The person who was responsible for monitoring her condition was Defendant Gragert or Defendant Gonzalez. Either or both Defendants failed to continuously monitor Victoria Gray, proximately causing her death.

50.    The length of time between face checks was not an isolated mistake. During her stay at Brazoria County detention center, the time between checks was as

much as 48 minutes, and frequently over the 30 minutes called for by Brazoria County's own standards. Because she was classified by two difference observers as being at maximum risk for suicide, this   failure to perform punctual checks is deliberate indifference to a substantial risk of harm.

51.     While she was in detention center, she was heard by other detention center inmates begging for medication, and crying out for assistance. These reports are corroborated by the report of Deputy Bailey. The officers on duty, Defendants Gragert and Gonzalez, would have heard her cries, or have actual knowledge from the reports of other officers, of these incidents. Their failure to take actions that were possible because of the availability of suicide watch cells at the facility, and possible because the needed medications were actually at the Detention Center having been on Victoria Gray's person at her arrest, was ignoring the complaints, and refusing reasonable requests for medical assistance made by Victoria Gray. Their failure to act was deliberately indifferent to the substantial risk of harm posed by Victoria Gray's mental disorder.

52.     Having been placed in isolation but not on suicide watch, Victoria Gray was not within 24 hour's "eye's on" contact with detention center staff, that is, she was not continuously monitored although she was a known suicide risk, who had previously attempted suicide in the same situation at the same detention center. The detention center staff also gave her the tool she needed to hang herself, a mattress cover. Persons on suicide watch are provided with a paper equivalent that cannot be used for strangulation. The detention center staff gave her the time and opportunity to form the mattress cover into a hangman's noose by failing to continuously monitor her behavior. She was placed in a cell with a towel rack, from which to hang herself.

53.     Victoria Gray's senseless death is only one of numerous instances where

Brazoria County has failed to provide needed medical care, including medications to alleviate mental illnesses or other medical conditions. For example: **Wilbert Lima** (cause number 3:16-cv-074) was deprived of his medications, possibly resulting in his stroke while in custody from February 2014 to December 2015 – this same time frame. **Curby Karless** (cause no. 3:14-cv-329) was deprived of medical care for a broken leg while being detained in October 2014 – this same time frame. **Lisandro Torres** (cause no. 3:12-cv-075) was deprived of insulin necessary for the treatment of his diabetes while incarcerated from September 2009, until his death by heart attack in March 2010. The connecting thread between these various medical conditions is the deprivation of medical care that was *immediately necessary* to prevent a substantial risk of harm. High blood pressure medicine, if discontinued, will create a substantial risk of stroke. Care for a broken leg, if not given, will create a substantial risk of infection. Insulin, if discontinued, will create a substantial risk of high blood glucose, resulting in eye degeneration, extreme weight loss, stroke, and death. Delaying or refusing medical care in these cases is so commonly known to be a substantial risk of harm as to defy reason. This is a continuing practice of indifference to immediate and serious medical needs that rises to the level of policy.

54.     The conduct and repeated pattern of Brazoria County's indifference to the medical needs of detainees and inmates is the kind of continued conduct that raises to the level of *policy* where Brazoria County is liable for the acts and omission of its employees. This pattern has extended for a period of time that would permit correction, if correction were sought.  Brazoria County has not sought to improve its treatment of the medical needs of detainees and inmates, raising a reasonable inference of deliberate indifference to their suffering which violates the constitutional rights of inmates and

detainees to be free from cruel and inhumane punishments, to due process, and to equal protection under the Constitution.

55.     Further, Victoria Gray's detention began at night, when there are reduced staffing levels. The officer on duty with the authority to determine whether Victoria Gray should be treated for her medical needs, or placed in isolation, was thus a policymaker, as he had no superior authority to seek guidance from when these decisions were made. The long standing policy of indifference to immediate medical needs gave him no motivation to provide immediately needed care.

56.     It was highly likely to a casual observer that Victoria Gray would enter withdrawal, and be injured, if she was not provided her medications because: The medical and detention center staff were trained observers. The medical and detention center staff were persons to whom it was foreseeable that Victoria Gray would be injured if treatment was not provided. Victoria Gray was in the age range that has increased suicidal ideation from withdrawal. Victoria Gray was determined to be a suicide risk upon intake, attempted self-harm during her detention, and had attempted suicide in the same circumstances in an earlier incarceration in the same detention facility.

## VII.   CAUSES OF ACTION

### A.     <u>Plaintiffs' 42 U.S.C. 1983 Causes of Action Against All Defendants</u>

57.     Plaintiffs allege that they, and Victoria Gray, were deprived of substantive and procedural due process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that Victoria Gray was subjected to cruel and unusual punishment under the Eight Amendment of the United States Constitution.

58.     The actions and omissions of Brazoria County complained of include:

a) Failing to provide needed and reasonable medical care to Victoria Gray;

b) Failing to provide for continuous monitoring of Victoria Gray, a known suicide risk;

c) Failing to adequately train detention center staff that a known suicide risk should not be placed in isolation, where continuous monitoring is difficult, inconvenient or impossible;

d) Failing to provide immediately available medication necessary for the treatment of Victoria Gray's mental condition;'

e) Delaying medical assessment of Victoria Gray's mental health condition and need for medications;

f) Delaying the provision of medications ultimately authorized to treat her medical needs;

g) Failing to adequately train detention center staff that pre-trial detainees like Victoria Gray should be provided with needed medication, especially in the case where the medication was court-ordered;

h) Being deliberately indifferent in failing to create and implement policies, standards and procedures for the protection of persons who are known suicide risks.

59.    The actions and omissions of Defendant Allen, Billups, Sandoval and Garrido include:

a) Failing to provide needed and reasonable medical care to Victoria Gray;

b) Delaying medical screening which determined that Victoria Gray was a suicide risk and needed medication for treatment of her mental condition;

c) Delaying or failing to provide medications which were immediately available

and needed for treatment of Victoria Gray's mental condition;

d) Failing to provide for continuous suicide monitoring of Victoria Gray, a known suicide risk;

e) Failing to adequately train infirmary staff that a known suicide risk should not be placed in isolation, where continuous monitoring is difficult, inconvenient or impossible;

f) Failing to adequately train infirmary staff that pre-trial detainees like Victoria Gray should be provided with needed medication, especially in the case where the medication was court-ordered;

g) Being deliberately indifferent in failing to create and implement policies, standards and procedures for the protection of persons who are known suicide risks, including immediate intake evaluation, and provision of necessary medications.

60.    The actions and omission of Detention center Staff, Defendants Gragert, Gonzalez and Gardner, complained of include:

a) Failing to use skill and good judgment in refusing to provide Victoria Gray with needed medication that had been court-ordered;

b) Failing to use skill and good judgment in placing Victoria Gray in isolated confinement where continuous monitoring was inconvenient, difficult or impossible;

c) Failing to remove all possible tools for suicide from Victoria Gray's detention center cell;

d) Spoiling or altering government records.

61.    Brazoria County Detention Center and its Detention center Staff have a

duty to provide adequate medical care to pre-trial detainees, or inmates, like Victoria Gray. This duty is non-delegable. That is, assuming Defendant Allen and its employees, was an independent contractor, the duty to supervise, and determine that constitutionally mandated medical care is actually provided remains a duty of Brazoria County. In the actions and omissions complained of above, Brazoria County Detention Center breached its duty of care, and hence violated the constitutional duty to provide immediately necessary medical care. The deliberate indifference of Brazoria County Detention Center violated the U.S. Constitution by causing cruel and unusual punishment, and failing to provide for due process.

62.     The aforementioned deprivations, acts and omissions of all Defendants were done under color of state law, ordinance, regulation, and custom or usage.

63.     Defendant Detention center Staff are liable in their individual capacities because their actions and omissions were committed while acting under color of state law and violated the constitutional standards of care, and the policies of Brazoria County.

64.     Defendant Brazoria County is liable for these constitutional violations because it condoned, ratified, sanctioned, permitted and/or participated in the unconstitutional actions detailed above. Detention center intake by Officer Kresta determined that Victoria Gray was at maximum risk, but Victoria Gray was not put on suicide watch. Officer Bailey reported that she asked for her medications, but Victoria Gray was denied her medications. Officer Bailey reported that Victoria Gray had attempted self-harm on August 30th, but Victoria Gray was not put on suicide watch or provided medical care for her injuries. Medical screening on August 31st, by Nurse Billups determined that she was a suicide risk, but Victoria Gray was not put on suicide watch. These several decisions over the course of four days generated reports available

to Defendant Gardner. In failing to correct the obvious errors of failing to provide immediately needed medication and observation, Defendant Gardner, as the policy maker in charge of the detention center for Brazoria County, ratified, condoned and permitted the lack of constitutionally mandated medical care.

65.    The acts and omissions of the several defendants, individual and institutional, contributed to proximately cause the death of Victoria Gray.

66.    Brazoria County Detention Center does not have a policy to fill the gap if immediate medical screening is not available. If it is inconvenient to medically screen a detainee over a holiday, a diabetic will still need insulin, a broken bone will still need to be set, and a suicidal detainee will still need her medications. Staff, including policymakers, detention center staff, and health care providers, should all be trained to recognize urgent needs. Without such a policy, the detainees are placed in the immediate danger of a substantial risk to their health. Without such a policy, the Brazoria County detention center does not meet constitutionally mandate standards of care.

67.    A reasonable person, in the same circumstances, would have observed the "red flags" during Victoria Gray's incarceration and taken action. The flags were: 1) symptoms of withdrawal, 2) suicidal history, 3) suicidal ideation on August 30th, 4) lack of medication, 5) means available – the mattress cover, 6) circumstances encouraging suicide – the isolation cell and towel rack. The actions available were: 1) questioning her placement in a low risk cell, 2) obtaining medical care including immediate screening, 3) providing medication which she provided at her arrest, 4) withholding the means of self-harm – the mattress cover, 5) placing her in an appropriate cell with observation and no towel rack. None of the Defendants in this case took any of the reasonably available actions to prevent Victoria Gray's suicide. A single instance might be negligence.

However, the complete and overwhelming lack of care and lack of life-saving action is evidence of deliberate indifference.

## VIII.  PRAYER

68.    As a proximate cause of the foregoing, Victoria Gray has suffered damages and seeks the following relief from the Defendants:

      a.    A declaration that the acts and practices complained of in this Complaint are in violation of the United States Constitution via Section 1983;

      b.    An injunction permanently restraining these violations of the United States Constitution via 1983;

      c.    Compensatory damages including, but not limited to:

            i.    Past physical pain and suffering;

            ii.    Past mental pain and anguish;

            iii.    Lost wage earning capacity.

69.    As a proximate cause of the foregoing, John Gray has suffered damages and seeks the following relief from the Defendants:

      a.    A declaration that the acts and practices complained of in this Complaint are in violation of the United States Constitution via ' 1983;

      b.    An injunction permanently restraining these violations of the United States Constitution via ' 1983;

      c.    Compensatory damages including, but not limited to:

            i.    Past and future physical pain and suffering;

            ii.    Past and future mental pain and anguish;

            ii.    Loss of consortium.

70.    As a proximate cause of the foregoing, Crystal Sandiford has suffered damages and seeks the following relief from the Defendants:

a.    A declaration that the acts and practices complained of in this Complaint are in violation of the United States Constitution via ' 1983;

b.    An injunction permanently restraining these violations of the United States Constitution via ' 1983;

c.    Compensatory damages including, but not limited to:

i.    Past and future physical pain and suffering;

ii.    Past and future mental pain and anguish;

ii.    Loss of consortium.

71.    Plaintiffs further seek an awarding of such other relief, legal or equitable, as may be warranted;

a.    Plaintiff further seeks pre- and post-judgment interest, costs  of court, attorney's fees and litigation expenses for trial and appeal;


WHEREFORE, Plaintiff requests that upon trial of this cause, that Plaintiffs have

judgment as authorized by law, and Plaintiff further requests general relief.

Respectfully submitted,

__/s/ Savannah Robinson_____
Savannah Robinson
ATTORNEY IN CHARGE
FOR Plaintiff
SBN: 17108150
Fed. ID: 5922
1822 Main
Danbury, TX 77534
(979) 922-8825
savannahrobinson@aol.com
**Attorney in Charge for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the parties listed below through the court's ECF service system or as indicated below on the _05th__ day of  March_, 2017.

***Via Electronic Case Filing***
Jesse M. Blakley, Jr.
Brazoria County District Attorney's Office
111 E. Locust, Suite 408A
Angleton, Texas 77515
ATTORNEY FOR DEFENDANT
BRAZORIA COUNTY, Gilbert Gardner,
Nancy Gragert, and Viviana Gonzalez

Jonathan La Mendola
Cobb, Martinez, Woodward PLLC
1700 Pacific Ave., Suite 3100
Dallas, TX 75201
Attorney for Defendants **J. Allen & Associates, LLC,**
Laronda Billups, Sandra Sandoval, and
Sherry Garrido,
.

                                    __/s/ Savannah Robinson_____
                                    Savannah Robinson