United States District Court
Southern District of Texas
**ENTERED**
September 18, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN GRAY, *et al* | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-109 |
| | § | |
| BRAZORIA COUNTY, *et al*, | § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs, John Gray and Crystal Gray Sandiford, filed suit against Brazoria County and other Defendants because their daughter, Victoria Gray, died after committing suicide on September 2, 2014 while she was in custody in the Brazoria County Jail.

Each of the Defendants moved to dismiss Plaintiffs' claims. This Court granted some, but not all, of those motions. Dkt. 63. The Court invited Plaintiffs to file additional detailed factual allegations regarding Defendants Gonzalez, Gragert, J. Allen & Associates, Billups, Sandoval, and Garrido. Plaintiffs have now filed their Second Amended Complaint, Dkt. 66.

The Court now turns to those more detailed factual allegations, considering them against each of the remaining Defendant's contentions that the claims should be dismissed.

The legal standards and applicable case law set out in the Court's prior Memorandum Opinion and Order, Dkt. 63, are incorporated into the following analysis and fully adopted here, without repetition.

## ALLEGATIONS AGAINST REMAINING DEFENDANTS

### 1. Defendants Gonzalez and Gragert

Defendant Gonzalez is sued in her individual capacity as an employee of Brazoria County. Plaintiffs allege she is the "Deputy Detention centerer [sic]", who "was responsible for checking on Victoria Gray at the time of her death." Similarly, Defendant Gragert is sued her individual capacity as an employee of Brazoria County and alleged to be the "Deputy Detention centerer [sic]", who "was responsible for checking on Victoria Gray immediately before her death."

Plaintiffs allege that Gonzalez and Gragert were the jail employees on duty the night of September 2, and that they were responsible for monitoring Gray's cell. Plaintiffs do not allege the time that Gonzalez came on duty that evening, or whether she had prior interaction with Gray. Plaintiffs allege that Gragert came on duty around 7pm, three hours before Gray's suicide. They do not allege whether Gragert had prior interaction with Gray.

According to Plaintiffs, Gonzalez and Gragert failed to continuously monitor Grey for a period of least twenty minutes, possibly longer, and they were aware Gray was not being continuously monitored. However, Plaintiffs do not provide any requirement or reason that supports their allegation that these Defendants should have "continuously" monitored Gray. Plaintiffs also allege that, based upon their review of documents in the

2

case, they "believe" that Gonzalez and Gragert's reports regarding cell checks on Gray are "falsified," but this claim is not clearly explained with respect to the alleged violation of Gray's constitutional rights.

Next, Plaintiffs allege that Gonzalez and Gragert both had "actual knowledge" that Gray was a "maximum" suicide risk, and that they had "actual knowledge" that Gray was in a cell that posed a danger to her because the cell did not have continuous monitoring, because Gray had been given a mattress cover that could be used as a ligature, and because the cell had a towel rack that could be used to support a hanging noose. Further, Plaintiffs allege that, despite knowing Gray was a suicide risk, and that her jail cell had a mattress cover and a towel rack Gray could use to commit suicide, neither Gonzalez nor Gragert removed the mattress cover or towel rack from Gray's cell, nor did they place her in a cell without such instruments. Again, however, Plaintiffs do not explain why or how these Defendants would have had the opportunity, authority, or responsibility to move Gray or change the arrangements in her jail cell. Plaintiffs allege that neither Gonzalez nor Gragert informed other jail employees that Gray "required greater observation, or more specific suicide prevention methods." But again, they do not explain the source of any such duty that Gonzalez or Gragert would have had, or what they should have done instead.

Finally, Plaintiffs allege that both Gonzalez and Gragert ignored Gray's audible cries that night, with Gray "begging" for medication and "crying out for assistance," and that both Gonzalez and Gragert ignored and refused Gray's "reasonable requests for medical assistance."

3

### 2. Medical Providers: J. Allen & Associates, Nurse Billups, Nurse Sandoval, and Nurse Garrido

Defendant J. Allen & Associates was "the contractor providing health care services to inmates and detainees in the Brazoria County Detention Center" and the employer of Nurses Billups, Sandoval, and Garrido. Plaintiffs allege that J. Allen & Associates is "obligated to provide two Registered Nurses 24 hours and 7 days a week, four LVNs during day hours seven days a week, and two LVNs during night hours, seven days a week, management services and psychiatric services." Plaintiffs do not allege, however, that J. Allen & Associates failed to meet this obligation.

As discussed at length in the Court's prior Order, Plaintiffs allege that Gray was under a court order to take certain antidepressant medications. Accordingly, when Gray was arrested on August 29, 2014 for violating other conditions of her probation, she had these prescription medication with her. Nonetheless, according to Plaintiffs, Gray's medication was withheld from her in the jail, even though she very quickly began to display "disruptive, . . . violent and irrational behavior," including hallucinations, begging for medication, and banging her head against the wall of her cell. Plaintiffs allege that Gray's medical screening was unreasonably delayed by the jail's medical personnel until August 31, 2014, even though Brazoria County policy for the Detention Center requires "immediate" screening by a nurse. Further, once the medical screening did take place, Plaintiffs allege that the nurses who examined Gray failed to adequately respond to the risk that she would commit suicide and either failed to medicate her entirely or knowingly gave Gray medication that they knew would pose a risk of harm to

4

her. Plaintiffs also generally allege that "all reasonable health care providers, including those in the field of corrections, are aware of the risks of withdrawal from [the medications Gray had been prescribed before her arrest] and its potentially fatal consequences."

As to Defendant Billups, a LVN, Plaintiffs allege that she performed a late medical screening, but not that she had the opportunity to conduct an earlier one. Plaintiffs also allege that Nurse Billups failed to report to her supervising nurse, Nurse Sandoval, that Gray was having auditory and visual hallucinations at the time of the screening, and that Nurse Billups failed to "initiat[e] a treatment plan that would protect Victoria Gray from readily foreseeable attempts to self-harm," and "delayed providing medications although the medications were readily available in the medical clinic (having been brought in by Victoria Gray)."

With respect to Defendant Sandoval, a RN, Plaintiffs allege she was the supervising nurse to whom Nurse Billups and Nurse Garrido reported, and that she was therefore at top of the "hierarchy of responsibility for nurses" because Texas law requires "LVNs report and be supervised by the RN. LVNs cannot function independently and only function under the RN's delegation and supervision."

As evidence of Sandoval's deliberate indifference to the risk to Gray, Plaintiffs point to the delay in conducting Gray's medical screening and Sandoval's failure to promptly report Gray's mental health issues to a state magistrate judge. Further, Plaintiffs contend that Sandoval delayed consulting with medical personnel about the need for Gray to take her prescription medication, which was in the clinic because it had been sent there

5

some time after Gray was arrested and booked into the jail—"Sherry Sandoval was responsible for being knowledgeable about the prescriptions, both their existence and their significance. The delay in acquiring a consultation on the appropriateness of continuing her medication is further evidence of a deliberate indifference to the substantial risk posed by Victoria Gray's mental disorder." On the other hand, and somewhat to the contrary, Plaintiffs allege that a Physician's Assistant had already authorized the continuation of Gray's prescription medications on August 31st, two days after her arrest, but Sandoval knowingly withheld the medications from Gray.

In yet another conflicting and rather conclusory allegation, Plaintiffs contend that Gray actually *was* given medication, but it was the wrong kind and it was not given until September 2nd. Thus, for all of these reasons, Plaintiffs allege "[d]elaying medication, and providing a different medication without a doctor's order, were performed or failed to be performed with deliberate indifference [by Sandoval]." However, Plaintiffs do not allege that Nurse Sandoval examined or interacted with Gray. Further, as noted above, Plaintiffs allege that Nurse Billups did not inform Nurse Sandoval of Gray's mental issues or the risk of self-harm she observed during the medical screening.

Finally, for Defendant Garrido, a LVN, Plaintiffs allege she administered "some medications" to Gray, and she had "actual knowledge" of the "delay" in giving Gray her court-ordered prescription medication. As with Nurse Billups, Plaintiffs allege that Nurse Garrido failed to report Gray's condition to her superiors and that she failed to properly monitor Gray. Unlike Nurse Billups, however, Plaintiffs do not allege that Nurse Garrido examined Gray or interacted with her, other than administering medication at some point.

6

## ANALYSIS

**A. Defendants Gonzalez and Gragert**

Defendants Gonzalez and Gragert assert that the claims against them should be dismissed under Rule 12(b)(6) and the doctrine of qualified immunity. After considering all of Plaintiffs' allegations, even when taken as true and making all inferences in their favor, the Court agrees that the claims against Defendants Gonzalez and Gragert should be dismissed.

The allegations against these Defendants simply do not state a claim for deliberate indifference or a denial of medical treatment that rises to the level laid out in other cases, including the Fifth Circuit's recent opinions in *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415 (5th Cir. 2017) and *Sanchez v. Young County*, 866 F.3d 274 (5th Cir. 2017).

At this point, the Court particularly notes that there is no doubt that ignoring or refusing to treat medical complaints by pre-trial detainees can rise to the level of a constitutional violation—but such claims have been sustained when the plaintiff has alleged "substantial harm," usually when both the refusal and the pain are alleged to be of sustained duration. *See, e.g., Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (holding that deliberate indifference was sufficiently alleged when guard: 1) ignored pre-trial detainee's requests for medical treatment after he had been assaulted and stabbed by prison inmates, sending him instead to lock down with more inmates; 2) failed to properly document injuries, instead using his personal cell phone; 3) delayed for over an hour before taking detainee to the hospital; and 4) then told

7

detainee to 'man up' and wait for over a week before detainee received his prescribed antibiotics and pain medication); *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014) (plaintiff alleged deliberate indifference where he alleged substantial harm due to defendant's persistent refusal to answer his "sick-call request slips" or provide pain medication even when he was in so much pain that he was unable to lie down in bed or use toilet properly); *Perez v. Anderson*, 350 Fed. App'x. 959, 962 (5th Cir. 2009) (vacating dismissal of Eighth Amendment claim where "Perez's allegations suggest that jail officials knew about his persistent pain yet delayed treatment by a physician for a substantial period").

In this case, Plaintiffs have been invited to replead their claims against these Defendants and they have apparently obtained information from both eye-witnesses and relevant documents, and incorporated this information in their new allegations.[1] But still, the Court finds that Plaintiffs have not pled sufficient facts to show that, on the particular evening in question, in the few hours that Defendants Gonzalez and Gragert are alleged to have been responsible for monitoring Gray (a detainee known to have mental health issues), the "cries" and "begging" these Defendants allegedly heard but failed to respond to rose to the level of "substantial harm" and "deliberate indifference" required by case law.

---

[1] The Court notes that, unlike *Alderson* and some other cases, Plaintiffs in this case are represented by counsel and do not appear *pro se*. Accordingly, while the Rule 12(b)(6) standards do require a great amount of leeway in evaluating the adequacy of pleadings, and that all inferences be made in Plaintiffs' favor, Plaintiffs are not entitled to the same amount of deference afforded *pro se* litigants such as *Alderson*, whose pleadings are subject to "less stringent standards." *See Alderson*, 848 F.3d at 423 n.9.

Further, even if the Court were to find that Plaintiffs had pled sufficient facts to raise a plausible claim against these Defendants, Plaintiffs have failed to plead sufficient facts to overcome the assertion of qualified immunity by these Defendants. Even with all reasonable inferences being taken in their favor, Plaintiffs' allegations do not set out any facts that even raise the possibility that the alleged actions or omissions by these Defendants were "objectively unreasonable" under "clearly established law." *See, e.g., Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016) (internal citations omitted); *Taylor v. Barkes*, 135 S.Ct. 2042 (2015).

### B. Defendants J. Allen & Associates, Nurse Billups, Nurse Sandoval, and Nurse Garrido

The medical provider Defendants have also moved to dismiss the claims against them under Rule 12(b)(6). Dkt. 67. After considering the filings, and the Plaintiff's claims, the Court agrees that the claims against J. Allen & Associates should be dismissed. Other than one allegation that J. Allen & Associates failed to provide a "Plan B" in the event a medical screening did not occur promptly, all of the claims against it are *respondeat superior* claims. As to that one "Plan B" allegation, this is not the type of claim that states a claim for relief under the applicable case law.

Further, as to Nurse Billups, Nurse Sandoval, and Nurse Garrido, the Court also agrees that these claims should be dismissed. Even taken as true, and making all inferences in Plaintiffs' favor, the allegations against these Defendants simply do not state a claim for deliberate indifference or a denial of medical treatment that rises to the level laid out in other cases, including the Fifth Circuit's recent opinions in *Alderson v.*

*Concordia Parish Correctional Facility*, 848 F.3d 415 (5th Cir. 2017) and *Sanchez v. Young County*, 866 F.3d 274 (5th Cir. 2017).

Further, even if the Court were to find that Plaintiffs had pled sufficient facts to raise a plausible claim against these Defendants, Plaintiffs have failed to plead sufficient facts to overcome the assertion of qualified immunity by these Defendants. Even with all reasonable inferences being taken in their favor, Plaintiffs' allegations do not set out any facts that even raise the possibility that the alleged actions or omissions by these Defendants were "objectively unreasonable" under "clearly established law." *See, e.g., Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016) (internal citations omitted); *Taylor v. Barkes*, 135 S.Ct. 2042 (2015).

## CONCLUSION

For the reasons stated herein, as well as the reasons stated in the Court's Previous Memorandum Order and Opinion, the Court hereby **GRANTS** the Motions to Dismiss filed by the Defendants named above (Dkt. 35, 52).

SIGNED at Galveston, Texas on September 15, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

10